## Ex Parte R. W. Patterson.

### No. 2299. ., Decided October 24, 1900.

**1.  Habeas Corpus—Jurisdiction of Court of Criminal Appeals.**

The writ of habeas corpus will be originally granted by the Court of Criminal Appeals in extraordinary cases, as where the proceeding is void, and an appeal will not be an adequate remedy.

**2.  Same—City Ordinance.**

The writ of habeas corpus is the proper remedy, and relief will be granted under it as against a city ordinance where the ordinance is so unreasonable as to be void.

**3.  City Ordinance—Tenpin Alleys.**

The statutory power conferred upon a municipal corporation to regulate tenpin alleys does not properly include the power to suppress or prohibit them; and an ordinance which, in locating its place of operation away from the business portion and public thoroughfares of the city, practically destroys its use and purposes as a legal occupation is therefore unreasonable and void.

From Van Zandt. Original application for habeas corpus to test the validity of a city ordinance regulating tenpin alleys. The city ordinance is copied in the opinion.

No statement required.

*James H. Young, Wynne & Smith,* and *Kearby & Kearby,* for relator.—Habeas corpus is the proper remedy to invoke, to obtain relief herein, upon the ground that said ordinance complained of is unreasonable, unconstitutional, and therefore void, and that when the county judge of the county of relator's residence refused him the writ, because of sickness and because of the grave questions involved, this court should exercise its discretion and entertain jurisdiction of said case originally.

The exhibits attached to the application for the writ herein show that the County Judge of Van Zandt County was applied to to grant the writ which was refused by him because of sickness and because the grave questions involved in his judgment should be passed upon by a higher tribunal. Ex Parte Gregory, 20 Texas Crim. App., 210; Ex Parte Terrell, 48 S. W. Rep., 504; Ex Parte Banks, 53 S. W. Rep., 688; Ex Parte Grace, 9 Texas Crim. App., 381; Church on Habeas Corpus, 2 ed., sec. 83.

We submit that said ordinance is unconstitutional in that its effect is to prohibit a business authorized and licensed by the State of Texas, and that the same is an unwarranted assumption and exercise of power by a city incorporated under the general laws of the State, and that the same is unreasonable in that it virtually drives said business out of said city, and is not a regulation, but is a prohibition of said business and is therefore void.

The record shows that relator had secured his license from the State, county and city to pursue his said business in said city, that by the terms of said ordinance relator was prohibited from operating said

business at any point in said city, other than pastures and fields, and on no public street. City of Austin v. Cemetery Assn., 87 Texas, 330; Ex Parte McCarver, 46 S. W. Rep., 936; Ex Parte Battis, 48 S. W. Rep., 513; Ex Parte Terrell, 48 S. W. Rep., 504; Ex Parte Garza, 28 Texas Crim. App., 281; Ex Parte Robinson, 30 Texas Crim. App., 493; Ex Parte Grace, 9 Texas Crim. App., 381.

*W. C. Blanks,* City Attorney, and *Rob't A. John,* Assistant Attorney-General, for respondent.—The jurisdiction of this court to hear this case originally, while not questioned so far as its legal right to do so is concerned, is, however, the subject of objection on the ground that the matter being wholly within its discretion, it should decline to entertain an original application for habeas corpus in a misdemeanor case, where the applicant has the right to appeal to the county court, and declines to exercise that right.

The applicant was convicted in the corporation court of the city of Wills Point. There was nothing to keep him from filing an appeal bond and appealing his case to the county court, where if he was again convicted, he would then have been in proper attitude to sue out a writ of habeas corpus before this court. It is the intent of the law, and best subserves the interests of justice and reason that the applicant should exhaust his privileges before the local courts before applying originally to this court. It seems that the county judge of Van Zandt County was sick, if so, the county judge of any other county could have been applied to. The fact that the county judge of Van Zandt County had once before passed upon the question adversely to applicant, is of no consequence. Applicant appealed to this court from the judgment of the county judge and his appeal was dismissed, because he was not actually in the custody of the city marshal. See Ex Parte Patterson, decided at Austin, April, 1900. Ex Parte Lynn, 19 Texas Crim. App., 120; Ex Parte Gregory, 20 Texas Crim. App., 210.

The ordinance in question is a valid one, and within the proper exercise of police power conferred upon the city by statute.

The city of Wills Point is incorporated under title 18, of the Revised Statutes, providing for the incorporation of cities and towns exceeding in population 1000, and not exceeding 10,000. Wills Point has a population of about 2000. Rev. Stats., art. 431; Rev. Stats., art. 464; City of St. Louis v. Russell, 22 S. W. Rep., 470; City of Tarkio v. Cook, 25 S. W. Rep., 202; 1 Dill. Mun. Corp., art. 400.

The article of the statute first quoted gives the city the right to "tax, license and regulate" tenpin alleys. The second article quoted is a general grant of power to the city to pass all ordinances necessary for the peace, quietude and good government of the city. The validity of this ordinance is dependent upon the legal signification of the word "regulate." The American and English Encyclopedia of Law, volume 20, pages 723, 724, in its definition of the word says: "But the power

to 'regulate' a business, trade, etc., authorizes a municipality to confine the exercise of such business to certain localities, to certain hours of the day, etc." By declaring at what location a tenpin alley shall not be located, this ordinance merely constitutes a negative location of tenpin alleys.

The ordinance involved in this case is not a prohibition. The most serious charge that can be urged against its regulation is that it is an inconvenience to this relator. Under the admitted facts there are many places within the corporate limits where he could have placed his tenpin alley.

We will close with a quotation from that excellent work, Horr and B., Municipal Ordinances, article 128, quoted with approval by the Supreme Court of Arkansas in the case of City of Hot Springs v. Curry, 41 Southwestern Reporter, 55:

"If an express power is given to a corporation to enact ordinances of a certain kind, the Legislature thereby trust to the discretion of the council to determine just how far they shall go within the limits imposed; and there is every presumption that the council are not only actuated by pure motives, but that they are so familiar with the mischief to be remedied, and with defects of prior regulations, as to be the best possible judges of the necessity for the enactment of the new law, and of the extent to which it is advisable to exercise the power granted. The council, and not the court, is the repository of this public trust, and it should be a plain case, indeed, to justify the later in interfering with the determination of the council, or of questioning either their motives, or the cogency of their reasons for enacting the ordinance."

HENDERSON, JUDGE.—This is an original application for a writ of habeas corpus to test the validity of an ordinance locating tenpin alleys in the city of Wills Point. The statement of facts agreed on by the parties shows: That Wills Point is incorporated under the acts of the Legislature (title 18, Revised Statutes), providing for the incorporation of cities and towns not exceeding 10,000 inhabitants. That the city of Wills Point contains a population of about 2000, and that said city passed an ordinance to the following effect: "(1) Be it ordained by the city council of the city of Wills Point that an annual occupation tax of fifty dollars, payable annually in advance, shall be levied on and collected from every person, firm, company or association of persons exhibiting, operating or managing, for profit, a nine or tenpin alley or any other alley, by whatever name called, constructed or operated upon the principle of a bowling alley, and upon which balls, rings or other devices are used, or substitutes thereof are rolled, without regard to the number of pins used, or whether pins are used or not, or whether the balls, rings or other devices are rolled by hand, or not. Any such alley used in connection with a saloon, or where money or anything or value is paid, shall be regarded as used for profit. (2)

And, whereas, in the judgment of the city council, such alleys are detrimental to the morals, peace and quietude of the city, it is further ordained by the city council that such alley shall not be constructed, operated or maintained within the fire limits of said city, nor within 100 yards of any private residence in said city, nor within 100 yards of any business house in said city, to which people resort for the purposes of trade and barter, and any person or persons, firm or association of persons violating this ordinance, shall, upon conviction in the corporation court of said city, be fined in any amount, not exceeding $100, and each day shall be considered a separate offense. (3) And that this ordinance take effect from and after its passage." That applicant procured a license for the purpose of running a tenpin alley in said city on the 14th day of February, 1900, paying State, county and city occupation taxes thereon; the last being paid to the city marshal, who issued a tax receipt therefor, containing no restriction as to the location of the alley, except that he was licensed to run within the corporate limits of the city of Wills Point. Said alley was constructed of wood, with an iron roof, and was attached to the rear end of the saloon. The front of the alley was some sixty feet from the front of the street, and the rear of the alley abutted on a public thoroughfare, being an alley in the rear of said saloon. That same was located within the fire limits of said city, and within less than 100 feet of business and residence houses in said city. That the only point within the corporate limits of said city where said alley could have been located outside of the prohibited points, under the ordinance, would be about 600 yards from the business portion of the town, and in a portion of the city remote from any thoroughfare or public place, but on streets which were run into pasturage or tillable lands in the suburbs of said city. It was further shown that said tenpin alley, in its operation, created noise. That it could be heard at night as much as 100 yards from its location.

Relator's contention is that said ordinance is unreasonable and is void. There is no question as to the jurisdiction of this court to grant original writs of habeas corpus. But, as was said in Ex Parte Lynn, 19 Texas Criminal Appeals, 120, "a sound discretion will be exercised in granting the writ, and this court will not authorize the issuance of the writ as an appellate proceeding." And see Ex Parte Boland, 11 Texas Criminal Appeals, 159. And, as was said in Ex Parte Lambert, 37 Texas Criminal Reports, 435, "inasmuch as this court has jurisdiction by appeal in habeas corpus proceedings, the writ will only be granted originally in extraordinary cases, as where the proceeding is void, and an appeal will not be an adequate remedy." In this case relator had been tried in the corporation court of Wills Point, adjudged guilty, and was in custody of the officer, but did not prosecute an appeal. His appeal, however, would have been to the county judge; and, even if an appeal had been prosecuted, the punishment, if it had been less than $100, would not have authorized an appeal to this court, and the

county judge refused the writ. So we take it that this is a proper case for the granting by this court of an original writ. It may be regarded as settled law in this State that the writ of habeas corpus is the proper remedy, and relief will be granted, as against a city ordinance, where the ordinance in question is so unreasonable as to be void. Ex Parte Battis, 40 Texas Crim. Rep., 112, and authorities there cited.

It is insisted, however, by the respondent, that the general statutes of the State, under which the city of Wills Point was incorporated, give to the municipal council of said city the power to regulate tenpin alleys, and that the power to regulate implies or carries with it the power to locate tenpin alleys. In support of this construction, we are cited to City of St. Louis v. Russell (Mo.), 22 Southwestern Reporter, 470. An examination of that case indicates that this is the view taken by the court deciding that case. However, we do not deem it necessary to decide that question, inasmuch as whether the power to regulate, under the statute, refers merely to authority to control the operation of the tenpin alley, wherever it might be situated, as to such hours as it might be permitted to run, etc., or embraces the authority to locate the same in any particular part of the city, is immaterial; for, if it be conceded that the power to regulate implies also the power to locate, still the exercise of this power must be reasonable. The power to regulate does not properly include the power to suppress or prohibit, for the very essence of regulation is the existence of something to be regulated. 20 Am. and Eng. Enc. of Law, p. 723. The power to regulate includes the power to restrain, so long as the restraint imposed is reasonable. The restraint must not so confine the exercise of any occupation as to amount to a prohibition. Horr and B. Mun. Ord., sec. 30. The power to regulate a trade, business, or occupation in any given town or city is to be determined by the environments and conditions of such town or city, and what would apply to one town or city might not apply to another. Dill. Mun. Corp., sec. 327. We would further observe that, in the power to regulate, a distinction appears to be taken in some of the authorities between trades or business of advantage or utility to the community, and occupations or business for the purpose of amusement, etc. A bowling alley would be classed in the last category. But it seems a bowling alley is not per se a nuisance. See State v. Hall, 32 N. J. Law, 158. However, bowling alleys or tenpin alleys are legalized in this State. Not only the State itself, but counties and cities are authorized to raise a revenue therefrom, and towns and cities are especially authorized to regulate them. The only question we have to decide is, was the power here exercised by the municipal council of Wills Point an unreasonable regulation? Of course, the object of the relator in establishing his tenpin alley in the city of Wills Point was to make a profit out of its operation, and it is would seem that this could only be done by locating it in such part of the city as would be easily accessible to the general public. But here it was, in effect,

driven out of the business portion of the city, and away from the public thoroughfares. No more effective way could have been adopted to frustrate the object of the owner than to locate it as was done in this instance. Indeed, it was conceded by the respondent in the argument that the object of the council was to discourage the keeping of a tenpin alley in the city of Wills Point; and it would appear from the facts in this case that, if the ordinance adopted is valid, it will not only discourage the operation of a tenpin alley in said city altogether, but will, in effect, prohibit its successful operation. We accordingly hold that the attempted exercise of power by the municipal corporation of Wills Point to locate the tenpin alley of the relator was unreasonable, and therefore void. Relator is accordingly ordered discharged, with the costs of this proceeding taxed against him.

*Relator discharged.*